LORENZO BULL et al.

v.

THE CITY OF QUINCY.

*Filed at Springfield January 12, 1895—Rehearing denied June 10, 1895.*

1. CONTRACTS—*construction of words "cost and expense," used in contract.* An agreement by a city to pay a water company the "cost and expense" of certain hydrants, and of "the putting in of the same," means the actual cost and actual expense, excluding profit, and not what the work and materials are *reasonably worth.*

2. SAME—*what is putting hydrants "upon street mains."* A contract by a water company with a city to put in certain hydrants "upon street mains," which mains are located out in the street, under the roadway, means that such hydrants shall be put upon the side of the street in which the mains are, and properly connected with the mains.

3. SAME—*agreement to pay cost of hydrants includes connections.* Under such contract the cost and expense of pipes and connections between the hydrants and the mains, as well as the cost of the hydrants proper, are recoverable, although the hydrants are set twelve feet from the main upon one side and thirty-six feet from it on the other.

4. SAME—*meaning of particular words yields to intent.* The meaning of words may be enlarged or restricted, according to the true intent of the parties, as made manifest by the various provisions of the contract, considered as a whole.

5. EVIDENCE—*agreement waiving itemized accounts, competent.* An agreement by a committee of the council of a city which is under contract to pay actual cost and expenses of certain hydrants, to waive itemized accounts and allow bills at a uniform price per hydrant, followed by the ratification of the council and payments made on that basis, is binding upon the city, and the exclusion of evidence of such agreement is error.

6. FRAUD—*dealing with unauthorized agent is not.* The fact that a person deals with those whose agency is of doubtful authority does not establish fraud on the part of such person.

*Bull* v. *City of Quincy,* 52 Ill. App. 186, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Adams county; the Hon. OSCAR P. BONNEY, Judge, presiding.

This was an action of assumpsit by the city of Quincy, against Lorenzo and W. B. Bull, partners, for money had and received by them, for the use of the city. The account filed asked to charge defendants with repayment to the city for over-payment by it on account of putting in thirty-six new hydrants, and of exchanging thirteen old hydrants for a like number of new ones.

In 1883 Lorenzo and William B. Bull and Edward Prince were partners, and owned and operated a system of water-works in the city of Quincy, by which water was supplied to the city for fire protection, and to the different departments of the city government, and to the citizens of Quincy. On June 22 of that year a contract was entered into between Bull, Prince & Bull, known as the Quincy Water-works Company, on the one part, and the city of Quincy on the other, covering a term of years, in and by which, among other things, it was agreed by the company:

"*First*—Immediately upon the payment to them by the city of the sum of $833.33, to replace in position all the fire hydrants lately removed by them, and to put all the hydrants now upon the streets of said city in condition for use, and to turn water upon the same.

"*Second*—To put in additional fire hydrants upon present street mains at their own expense, within a reasonable time, when and where required by the city council of said city, to the number of thirty-nine, making the whole number of hydrants one hundred and twenty, and to put in such further number of fire hydrants upon street mains now laid, or which may hereafter be laid, as may be ordered by said city council: *Provided*, that the cost and expense of all such further number of hydrants, and of the putting in of the same, shall be paid by said city: *And provided, also*, that all such further hydrants shall be the property of and under the control of said parties of the first part, to the same extent as the existing hydrants."

The first of the hydrants "the cost and expense of which, and the putting in of the same," were to be paid by the city under the terms of the agreement, were placed in position prior to November 19, 1887. The number was twenty-nine, for which the company charged, and the city paid, the sum of $75 each. On or about the date last mentioned, Lorenzo and William B. Bull acquired, by purchase and assignment, all of the interest of Edward Prince in the property and contracts of the water-works company.

This action is brought by the city against Lorenzo Bull and William B. Bull, as partners, to recover the difference between what was actually paid by the city,— $75 for each hydrant,—and what is claimed as the cost of the hydrants furnished by the company and the putting in of the same, subsequent to November 19, 1887, and down to July 19, 1890. Besides the thirty-six new hydrants involved in this suit, a recovery is sought to be had for the difference between the price charged and received by the company and the price that it is claimed should have been charged for thirteen hydrants which were substituted for the same number of old hydrants that were taken out. The sum of $37.50 was charged and collected for each of the thirteen hydrants so changed.

It was and is stipulated by the parties that the same contract above quoted, between the city and the owners of the water-works, relative to the putting in of and the compensation for hydrants, was in force between the parties to this suit during the time all the hydrants here in question were being put in or set; and in regard to the thirteen hydrants for which exchange was made, the stipulation is that they were put in with the understanding of both parties that they were to be put in at one-half of the cost and expense of new hydrants, on the basis of the contract quoted.

A jury were waived, and the issues were submitted to the circuit court of Adams county. The court found for

the city, and rendered judgment in its favor for $1083.75 damages. This was an allowance of damages at the rate of $25.50 for each of the. thirty-six hydrants, and at the rate of $12.75 for each of the thirteen substituted hydrants. In other words, the appellants were allowed to retain as compensation for each of the thirty-six hydrants, and for "the putting in" of the same, the sum of $49.50, and to retain $24.75 for each of the thirteen that were substituted. On an appeal to the Appellate Court the judgment was affirmed. This appeal was then taken from that judgment of affirmance.

BERRY, O'HARRA & SCOFIELD, for appellants :

As a general rule, the construction of a contract should accord with its terms, as understood and assented to by the parties. *Conwell* v. *Pumphrey*, 9 Ind. 135 ; *Durland* v. *Pitcairn*, 51 id. 443 ; *Reissner* v. *Oxley*, 80 id. 584.

The construction given to a written contract by the parties themselves, as shown by their acts under it, may be resorted to as a means of determining the true intention which they had in view in entering into the same. *Leavers* v. *Cleary*, 75 Ill. 349 ; *Alexander* v. *Tolleston Club*, 110 id. 65 ; *Vermont Street M. E. Church* v. *Brose*, 104 id. 206 ; *Hall* v. *Bank*, 133 id. 234.

In case of a voluntary payment by mere mistake of law, no action will lie to recover back the money. The construction of the law is open to both parties, and each is supposed to know it. *Elliott* v. *Swartwout*, 10 Pet. 137; *Morgan* v. *Palmer*, 2 B. & C. 729 ; *Bromley* v. *Holland*, 7 Ves. 23 ; *Brisbain* v. *Dacres*, 5 Taunt. 154.

In the absence of fraud, the body which is given the power to allow claims, when they have officially passed upon a claim, must be conclusively presumed to have had, at the time, full knowledge of all the facts pertaining thereto which a proper investigation would then have disclosed. *Advertiser Co.* v. *Detroit*, 43 Mich. 116 ; *County of Wayne* v. *Randall*, id. 137; *McArthur* v. *Luce*, id. 435.

Ratification may as frequently be inferred from acquiescence after knowledge of all the material facts, as from acts inconsistent with any other supposition. The same principle is applicable to municipal corporations as to individuals. 1 Dillon on Mun. Corp. sec. 463 ; *Town of Bruce* v. *Dickey,* 116 Ill. 527.

H. M. SWOPE, and SPRIGG, ANDERSON & VANDEVENTER, for appellee :

Money paid under mistake of fact as to the sum due may be recovered in assumpsit for money had and received. *Frambers* v. *Risk,* 2 Ill. App. 499 ; *Devine* v. *Edwards,* 101 Ill. 138 ; *Stempel* v. *Thomas,* 89 id. 146 ; *Maxwell* v. *Longenecker,* 82 id. 308 ; *Bradford* v. *Chicago,* 25 id. 349 ; *Bierdslee* v. *Horton,* 3 Mich. 560 ; *Little* v. *Derby,* 7 id. 325.

Before acquiescence in a particular construction of a contract can bind a party, by way of ratifying such construction there must be the act of some one in authority, and by such means as could legally express the intention and consent of the party to be bound. It must have been with knowledge of all the essential facts. Dillon on Mun. Corp. (4th ed.) p. 534, sec. 459, and note ; 6 Wait's Actions and Defenses, p. 707, and cases cited ; *Peterson* v. *New York,* 17 N. Y. 449.

The party receiving payment must also have been "guilty of no fraud, misrepresentation or concealment of fact, inducing the action of the board." *People* v. *Foster,* 133 Ill. 496 ; *Reynolds* v. *Ferree,* 86 id. 570 ; *Railroad Co.* v. *Kelley,* 77 id. 437; *Kerr* v. *Sharp,* 83 id. 203.

Audit and payment of appellants' bills without making an outside investigation as to their correctness, "in the absence of facts apparent to reasonably arouse suspicion and throw doubt upon the truth of the statements," would not estop the city from recovery. *Endsley* v. *Jones,* 120 Ill. 481.

In *Devine* v. *Edwards,* 87 Ill. 177, the court held that payments of overcharges for a series of at least five

years, where receipts had also passed, did not estop the payer from recovery.

The court construed the contract of June 22, 1882, correctly. *Supreme Council* v. *Curd*, 111 Ill. 284; *Stearns* v. *Sweet,* 78 id. 446.

Mr. JUSTICE BAKER delivered the opinion of the court:

The trial court refused to hold the following proposition of law submitted by appellants :

"That in the written contract between the defendants on the one part and the city of Quincy on the other, which is in evidence, the following language : 'And to put in such further number of fire hydrants upon street mains now laid, or which may hereafter be laid, as may be ordered by said city council: *Provided,* that the cost and expense of all such further number of hydrants, and the putting in of the same, shall be paid by the said city,' does not mean that the city of Quincy would pay only the actual cost for such hydrants as might be ordered by the city council under said provision in said contract, and the actual sum expended by them in putting in the same, but it means that said city would pay for said hydrants, and for putting them in, what the same was reasonably worth."

There was no error in the action of the court in that regard.   In construing the contract the words used must be given their natural, popular and obvious meaning. There is nothing in either the contract itself or in the surrounding circumstances tending to show that the parties used them in some other and different sense.   When the parties agreed that the city should pay "the cost and expense" of the "further number" of hydrants, and "the cost and expense" of "the putting in of the same," there is no ground for saying that it was intended that the city should pay therefor what the water-works company or some one else might think or might say the hydrants, and the work and expense of putting them in, were rea-

sonably worth. Such reasonable worth, or value, would necessarily include a reasonable profit to the company, and the element of profit is plainly excluded by the very words that were selected to express the intention of the contracting parties. *Ex vi termini*, cost means actual cost, and expense means actual expense or outlay. In our opinion there is not even a plausible pretext for the contention of appellants on this branch of the case.

The court also refused to hold as law the seventh proposition tendered, which reads thus :

"That if it is shown, by a preponderance of the evidence, that a committee of said city council agreed with the defendants, or with one of them, to waive itemized accounts of the cost of setting said hydrants complete, and in lieu thereof agreed to audit and allow all such claims at a uniform price of $75 per complete hydrant, and, with knowledge of such facts, that the said city council afterwards ratified said action of said committee and allowed such bills, then the issue should be found for the defendants."

Owing to numerous circumstances, such as changes in the market price of hydrants and other material used, differences in the wages of labor at different times, differences in the nature of the soil to be excavated, the existence or non-existence of rock that must be cut through in the particular locality, etc., the cost of hydrants and the expense of putting them in, at different times and in different localities, would probably vary. The evidence tends to show this. We are unable to see why it was not entirely competent for the parties to the contract, subsequent to its execution, to approximate "the cost and expense," and agree upon a sum certain as "the cost and expense" of the hydrants and "of the putting in of the same," instead of keeping a strict account and making a strict computation in respect to each individual hydrant,—and this, without abrogating the contract or even changing it. It would be merely an arrangement

as to the mode of ascertaining "the cost and expense." If the auditing committee of the city council, and appellants, mutually agreed that itemized accounts of "cost and expenses" should not be kept or rendered, but a stated and uniform price paid for each hydrant and for setting it, and the city council, with knowledge of the facts, ratified the arrangement, and from time to time paid the bills that were rendered upon the basis of this approximated and uniform "cost and expense," it seems to us that both parties, unless fraud is shown to have intervened, would be bound by the settlements so made.

Appellants offered evidence tending to prove the fact and the circumstances of the claimed arrangement between them and the committee of the city council, and also evidence tending to prove ratification on the part of the city council, but the court sustained objections to it, and even excluded portions of it that had crept into the record. But, even as the record stands, it appears that E. H. Osborn, a witness for the city, and who was an alderman at the time of the transactions involved, testifies, "it was understood, for some reason, that the price of the hydrants was $75, because that was discussed generally in the council." And the mere fact that each hydrant, with the setting, put in from time to time through a series of years, was paid for, without question, at the uniform price of $75 by the city council, when, necessarily, every member of that council must have known, from the very nature of the case, that the setting of no two of those hydrants could likely have cost the same amount, within and of itself is a circumstance going far to show that they understood and were willing to adhere to and act upon some agreement entered into by some one, somewhere, by which $75 was fixed as the sum total to be paid by the city council for each and every hydrant and the setting of the same.

We think the court erred in refusing to hear the proffered testimony, and in refusing to hold as law said

proposition 7. It would, of course, be a question of fact for the jury, or for the court sitting as a jury, to determine whether or not the weight of the evidence proved the supposed arrangement for the ascertainment of "the cost and expense" of each hydrant and of setting it, and its ratification by the council; but neither the one nor the other would be properly qualified to pass upon these matters unless the evidence relating thereto was first heard.

Stress is laid by appellee upon the fact that the court, in view of the first and second of the propositions held by it to be law applicable to the case, could not have rendered the judgment that it did without finding, from the evidence, that the over-payments complained of in this suit were brought about by the fraud of appellants. But the claim of fraud is largely based on the fact that appellants did not present itemized accounts of the cost and expenses of the hydrants and of setting the same, and, instead of so doing, simply rendered bills "for setting hydrants." Appellants should, at the least, have had an opportunity of rebutting, or attempting to rebut, the implication of fraud, by showing the arrangement they claim to have made with the committee, waiving itemized accounts,—and this, whether the action of the committee in the premises was either authorized or ratified by the council or not. The mere fact a person makes a deal with those whose agency is of doubtful authority, does not establish, beyond peradventure, that such person is himself guilty of fraud.

The court also refused to hold and follow proffered proposition 10, which was as follows:

"That in determining the costs and expense of the hydrants in question, and of the putting in of the same, there should be taken into consideration the cost of all the material used, including the hydrants, the pipe, and all special castings or fixtures necessary to conduct the

water from the mains through such hydrants, and the cost of the labor in putting in the same."

The contract must receive a reasonable and sensible construction. Its language is : "And to put in such further number of fire hydrants upon street mains : * * * *Provided*, that the cost and expense of all such further number of hydrants, and of the putting in of the same, shall be paid by said city." It appears that the mains are under the roadway of the streets,—not in the center of the street, but nearer the outer edge of the roadway on one side of the street than on the other. The hydrants that are on the same side of the street that the main is on are twelve feet from the main, and those that are on the other side of the street from the main are thirty-six feet therefrom. The contract reads that the hydrants shall be put "upon street mains." Of course, this does not mean that the hydrants shall be put in the ground immediately over and "upon the mains." That would be absurd. If they were so placed they would be obstructions in the public highways, would interfere with the use of the streets and with travel thereon, and would be a constant menace that would endanger life, limb and property. What the contract means when it says that the further number of hydrants shall be put "upon street mains now laid or which may hereafter be laid," is, simply, that they shall be put in or upon streets in which mains are or may be located, and connected with such mains. It would be quite useless to place them on streets in which there were no mains from which they could be supplied with water, and quite as useless to set them up in streets on which there were mains, and not unite them to the mains by means of the necessary pipes and other fixtures. And it was a full compliance with the requirement of the contract when a hydrant was set at one side of a public street, where it would not interfere with travel, and a proper connection made with the main; and it mattered not whether such hydrant was

immediately at the main, or twelve or thirty-six feet distant therefrom.

The intent of the contract is the life of the contract. What was the water-works company to do in regard to the "further number of fire hydrants?" It was to "put them in" "upon street mains." If it had merely dug holes in the streets, either immediately over and upon the mains or at the sides of the streets, and had put or set these hydrants in such holes without making any connections whatever with the mains, would it have been a compliance with the demands of the agreement? Manifestly not. To say so would be to stick in the bark. And all that the water-works company was called upon to do in regard to these "further hydrants" the city was required to pay for. The contract expressly says that the company is "to put in such further number of fire hydrants," and "that the cost and expense of such further number of hydrants, and of the putting in of the same, shall be paid by said city."

Appellee insists that a hydrant consists only of a stand-pipe and a rod running through the center of it to a bell at the bottom, and that all pipes and special castings are excluded by the use of the word "hydrant." That depends upon the connection in which, and the subject matter with reference to which, the word is used. If manufacturers or wholesale dealers had contracted to sell a given number of "fire hydrants" to appellants at a specified price, we would suppose that those words were used in the sense that is contended for in this case. But they do not have that restricted meaning in this contract for the supplying and putting in of fire hydrants, and the making payment for such hydrants and the putting in of the same. The provision immediately preceding the one under examination, and found in the same sentence of the contract, is, that the water-works company shall "put in additional fire hydrants upon present street mains at their own expense, * * * to the number of

thirty-nine." Suppose the company had provided thirty-nine stand-pipes, with rods running through the center of them to bells at the bottom, and had set these in the streets, upon street mains, and had stopped right there, without forming connections with the mains ; would the city authorities or anybody else have regarded that as a full performance of the terms of the contract? Very plainly, they would not.

In the interpretation of the provision of the contract that is involved in this suit we think it a matter of little moment that in item first of the contract the word "hydrants" and the words "fire hydrants," there found, are so used as to exclude the pipes and castings and special fixtures between the street mains and the bell on the base of the hydrants. The subject matters provided for in items first and second are essentially different. Item first merely makes provision for replacing in position fire hydrants that had been lately removed, and placing them in condition for use, and turning water upon the same. The pipes, castings and other special fixtures that lie between the mains and the bell at the base of the hydrants were already there and in place, and all that there was to do was to replace the hydrants proper, that had been removed, and connect the bell at the bottom with the pipes and other castings that led to the main. Of course, that item did not contemplate that the company would destroy the connecting links already there, for the mere purpose of supplying new and like connecting links to the main. But in item second, which deals with "additional fire hydrants" and of a still "further number of fire hydrants," provision was made for cases where there were no pipes, castings and special fixtures already provided and placed, and consequently, as we have already seen, the word "hydrants" had a more enlarged meaning. The meaning of words may be enlarged or restricted according to the true intent of the

155—37

parties, as made manifest by the various provisions of the contract, considered as a whole.

Stress is laid upon the circumstance that it is provided in item second of the contract that the "further hydrants" therein mentioned are to be the property of the water-works company, and under their control to the same extent that the then existing hydrants were. It seems to be apprehended that if the city pays for the pipes and other castings that are placed between the mains and the bell at the bottom of the hydrants, the ownership of such pipes and castings will be in the city, and that this would lead to complications, since the mains and the hydrants proper will remain the property of the company. The pipe and castings attached to each hydrant are really but fixtures to such hydrant when complete, and are essential to its use as a hydrant, and are of no other use. They are buried in the earth, and will be consumed in their use as such fixtures. From the nature of the case and the stipulations of the agreement it is evident that it was the understanding that they would become a part of the hydrant and of the water-works plant.

We think that it was error to refuse to hold proposition 10, and to exclude the testimony tending to prove the cost of the special castings in the mains, of the pipes leading from the mains to the bells and of material used in setting these fixtures, and in excluding the evidence to prove the expense of the labor employed in putting in said pipes and special fixtures.

The court having refused to allow the claim of appellants for a fixed compensation of $75 for each hydrant and setting the same, the erroneous rulings made in regard to said proposition 10, and the evidence upon which it was based, necessarily worked great injury to their rights.

For the errors herein indicated the judgments below are reversed, and the cause is remanded to the circuit court.

*Reversed and remanded.*